**Claire L. KUZNIAR**

v.

**David S. KEACH, d.b.a. Keach Construction Co., et al.**

**No. 96–133–Appeal.**

Supreme Court of Rhode Island.

April 9, 1998.

James E. Kelleher, Warwick, for Plaintiff.

Michael DeSisto, Gregory A. Madoian, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

When, as here, a governmental entity and/or its officials are sued for alleged negligence, a Superior Court trial justice—rather than a jury—should determine the existence of any legal duties owing to the plaintiff and communicate to the jury what those duties consist of under the circumstances of the case. The trial justice should do so even when the existence of certain predicate, duty-triggering facts is disputed by the parties. In such a case the trial justice should instruct the jury that the extent and nature of any legal duties owed will depend upon whether it finds these disputed facts to have been established by a preponderance of the evidence. The jury should then be charged to determine whether any of these disputed facts have been proven, and if so, whether

the defendants have breached whatever legal duty they may have owed to the plaintiff in these circumstances.

In this case, however, a Superior Court justice left it entirely up to a jury to determine whether the defendant municipality and certain of its officials owed a legal duty to plaintiff. Because the court should have performed this function rather than the jury, we reverse and remand for a new trial.

### Facts and Travel

In 1988 plaintiff, Claire L. Kuzniar (Kuzniar), decided to renovate and winterize her summer cottage. Located within the city of Warwick (city), the cottage lay in a slight gully close to Occupassatuxet Cove, an arm of Narragansett Bay. It rested on blocks and was serviced by a domestic cesspool. Because of the topography in that littoral location, the water table by the cottage was in places a mere six inches from the surface of the ground. In addition rainwater would flow toward the cottage from the street level and collect or pool at the base of the gully.

In the spring of 1989 Kuzniar contracted with the defendant, builder David S. Keach (Keach), to renovate the cottage. Keach thereupon submitted an application for a building permit to the city building inspector's office. Keach's application indicated that in renovating the cottage, he would retain two walls from the existing structure. However, Keach did not submit a permit for an individual sewage-disposal system (ISDS) along with the application.[1] Relying upon Keach's application, the local building official issued a "reconstruction" or remodeling permit on April 15, 1989. The city contends that unlike a permit for construction of a completely new structure, a remodeling permit did not require prior ISDS approval by the Rhode Island Department of Environmental Management (DEM).

On May 8, 1989 Melvin Sturdahl (Sturdahl), the city's deputy building inspector, conducted an onsite inspection of the cottage and discovered that, contrary to the representations in Keach's permit application, the entire cottage had been razed. Sturdahl immediately posted a stop-work order at the site based upon Keach's apparent violation of the parameters of the remodeling permit. Keach thereafter applied for a second permit but again submitted no ISDS approval or permit. At that time Keach allegedly informed Shirley Reccko (Reccko), an employee in the building official's office, that an ISDS permit probably could not be obtained because of the nature of the land underlying the cottage and the height of the water table. The town's building official, Richard Crenca (building official), nevertheless issued a second remodeling permit (second permit) on May 24, 1989.

Keach asserted at trial that the city had issued the second permit to him so that the cottage-renovation project could continue but that the permit was subject to the condition that Keach had to present the requisite DEM approval before the city would issue a certificate of occupancy. The building official, however, testified at trial that he issued the permit on the basis of his mistaken belief that two walls of the original structure remained intact. He stated that he would not have issued the second permit had he known that the cottage had been demolished and that the water-table conditions precluded ISDS approval. However, the building official's records from May 8, 1989 (the date of the stop-work order issued by deputy inspector Sturdahl), contained the notation "B–14 Cole Farm, new foundation. *Existing building completely demolished. Complete new building. Not renovations.*" (Emphasis added.) The building official later admitted

---

**1.** A Warwick city ordinance required the submission of a state-issued ISDS permit before local issuance of any building permit. *See* Warwick, R.I., Municipal Ordinances § 66–1 (1996). Pursuant to G.L.1956 § 45–24.5–3, Rhode Island cities and towns may enact ordinances relating to ISDS inspection and maintenance. State ISDS certification and permit requirements are set out in the rules and regulations of the Rhode Island Department of Environmental Manage-

ment. *See* Establishing Minimum Requirements for Certification of Land for Disposal of Sewage by Individual Sewage Disposal Systems, Department of Environmental Management, 6 Code R.I. Rules 12–120–001 (October 1978). We are not called upon to determine whether, when, or from whom an ISDS approval was required in the circumstances in this case. Accordingly we do not address any aspect of that issue.

that his routine practice was to review such records after a stop-work order had issued.

Despite the lack of any ISDS approval, construction of the new cottage proceeded under the second permit. Eventually Kuzniar discovered that she would have to install an ISDS to replace the existing cesspool in order to obtain a certificate of occupancy. But by that time her relationship with her contractor, Keach, had deteriorated to the point that Kuzniar decided to arrange for another builder to install an ISDS. After doing so, she also learned that because the house foundation as built by Keach was too low to accommodate a relatively inexpensive "gravity-fed" ISDS, she had to install a more expensive pump-driven system that elevated wastes from the house to street level. Kuzniar thereafter filed suit against Keach for various breaches of their construction contract. A jury returned a verdict in favor of Kuzniar and against Keach for $76,000 in compensatory damages and an additional $30,000 in punitive damages. That verdict is not challenged here.

In addition to her lawsuit against Keach, Kuzniar also sued the city, alleging that the city's issuance of the second remodeling permit without the required ISDS approval allowed Keach to continue on the project in violation of the applicable ordinances and contrary to state environmental laws. Kuzniar theorizes that if the city had required an ISDS approval earlier in the course of her construction project, she would have hired a septic-system consultant who in turn would have advised her that her house foundation needed to be raised in order to install a gravity-fed septic system. As a result, Kuzniar reasons, not only would she have avoided the expense of the pump-driven ISDS but she would also have been able to dodge certain additional damages she sustained when rainwater collected at the base of her new home and rotted out the flooring timbers.

At trial Kuzniar contended that G.L.1956 § 9–31–1, and our case law addressing the "special duty doctrine," subjected the city to liability for its alleged negligence in issuing the second permit. Following a four-day trial the trial justice submitted to a jury the question of whether in the circumstances of this case the city owed a duty to Kuzniar. The jury then returned a verdict in favor of the city, on which verdict the court entered judgment. Alleging various errors of law, Kuzniar appeals from the judgment and from the trial justice's denial of her motion for a new trial. Because we hold that the trial justice erred in submitting the issue of the town's legal duty to the jury and because this error necessitates a remand for a new trial with respect to the municipal defendants, we address only the first of Kuzniar's assigned errors.

## Analysis

■ Section 9–31–1 provides:

"The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall * * * hereby be liable in all actions of tort in the same manner as a private individual or corporation; provided, however, that any recovery in any such action shall not exceed the monetary limitations [$100,000] thereof set forth in this chapter."

In a succession of opinions articulating what has come to be known as the public-duty doctrine, this court has held that § 9–31–1's waiver of the traditional sovereign immunity enjoyed by state and municipal governments for their discretionary acts is restricted to three situations: (1) when the governmental entity owes a "special duty" to the plaintiff,[2] (2) when the alleged act or omission on the part of the governmental entity was egregious,[3] or (3) when the governmental entity engaged in activities normally undertaken by private individuals or corporations.[4] The

2. See, e.g., Quality Court Condominium Association v. Quality Hill Development Corp., 641 A.2d 746, 750 (R.I.1994); Catri v. Hopkins, 609 A.2d 966, 967–68, 969 (R.I.1992) (special duty and egregious conduct); Knudsen v. Hall, 490 A.2d 976, 978 (R.I.1985).

3. See, e.g., Haley v. Town of Lincoln, 611 A.2d 845, 849 (R.I.1992); Verity v. Danti, 585 A.2d 65, 67 (R.I.1991).

4. See, e.g., Catone v. Medberry, 555 A.2d 328, 333 (R.I.1989) (government undertakes activity typically performed by private individuals).

parties to this action have agreed that only the special-duty exception to the public-duty doctrine is at issue here.

■ The special-duty rule holds that government entities will be liable for actions taken in the course of their public functions when "the plaintiffs have had some form of prior contact with state or municipal officials 'who then knowingly embarked on a course of conduct that endangered the plaintiffs, or they have otherwise specifically come within the knowledge of the officials so that the injury to that particularly identified plaintiff can be or should have been foreseen.'" *Quality Court Condominium Association v. Quality Hill Development Corp.*, 641 A.2d 746, 750 (R.I.1994) (quoting *Knudsen v. Hall*, 490 A.2d 976, 978 (R.I.1985)).

The trial justice's jury instructions in this case left it entirely to the jury to decide whether the city owed a special duty to plaintiff. Thus, after rejecting the suggestion from Kuzniar's attorney that the court determine whether a special duty existed in the circumstances of this case, the trial justice gave the following jury charge on the issue of the city's potential liability for negligence:

> "In order to prevail, ladies and gentlemen * * * the plaintiff must prove by a preponderance of the evidence that the Defendant City was negligent and that the defendant's negligence was a proximate cause of the injuries complained of by the plaintiff.

> "And I tell you now that generally the sovereign, State, City, governmental units, may not be sued for negligence except in certain limited circumstances. And I tell you, ladies and gentlemen of the jury, that in this kind of a suit * * * the plaintiff, to succeed in her claim against the City, she must satisfy you, and *the evidence must be sufficient for you to find by a preponderance that a special duty was owed to her by the City*, because in connection with this type of activity, the activity of administering the building code, and doing the City building inspections, I tell you that it is not sufficient simply to be a member of the general public that is impacted by a wrongful act.

> "If it were a decision by the building inspector, one must prove * * * that a special duty was owed to her as an individual rather than as a member of the general public.

> "In order to prove a special duty, the plaintiff must establish by a preponderance of the evidence that she had some form of prior contact with the City of Warwick officials who then knowingly embarked on a course of conduct that endangered her, or that she would have otherwise specifically come within the knowledge of those officials so that the injury that she complains of can be or should have been foreseen by the City official.

> "For example, I tell you that simply a building inspector's visit to a site to insure compliance with the building code is not sufficient to establish a special duty. I tell you that a municipality is not an insurer, a general insurer, of every construction project within its limits." (Emphasis added.)

■ Kuzniar argues that as a matter of law it was incumbent upon the trial justice to determine the threshold question of whether the city owed any special duty to her in the circumstances presented and that it was reversible error to submit that question to the jury in the manner in which it was submitted.[5] We agree.

---

5. The city argues on appeal that Kuzniar waived this issue for purposes of appeal by failing to object on the record below and in fact invited this error by submitting proposed jury instructions containing language substantially similar to the objected-to language in the jury charge. However, during oral argument before this court, counsel for the parties agreed that Kuzniar's attorney raised this issue in a timely fashion with the trial justice during an unrecorded conference to discuss the proposed jury instructions, which were in effect submitted as a backup to Kuzniar's argument that the court should instruct the jury that a special duty did exist based upon the evidence presented in this case. Moreover, in his bench decision denying Kuzniar's motion for a new trial, the trial justice gave no indication that he considered Kuzniar's objection to the submission of this issue to the jury to have been untimely when he stated, "Here the plaintiff alleges, claims and argues that this Court, in connection with its instructions to the jury, committed three errors [including this issue] as outlined during the course of argument by counsel, and is well set forth in counsel's moving papers in this matter." In light of these circumstances we deem the issue properly preserved for appeal.

A legal duty is an obligation imposed by the law upon a person. It requires that person to conform his or her actions to a particular standard. And it also carries with it a recognition that the law will enforce this duty to the benefit of other individuals to whom this duty is owed. Put another way, the existence of a legal duty depends on whether the interest that a defendant has allegedly invaded is entitled to legal protection. *See generally* W. Prosser, *The Law of Torts* § 37, at 206 (4th ed. 1971). The existence of a legal duty is purely a question of law, and the court alone is required to make this determination.[6] *See, e.g., Salmeron v. Nava,* 694 A.2d 709, 712 (R.I.1997); *Banks v. Bowen's Landing Corp.,* 522 A.2d 1222, 1224 (R.I.1987); *Barratt v. Burlingham,* 492 A.2d 1219, 1222 (R.I.1985). In the words of the Restatement (Second) of Torts, "whether such facts [those proven in a particular case] give rise to any legal duty on the part of the defendant" is a determination "always for the court to make [and] never for consideration or determination by the jury." Restatement (Second) of Torts § 328B(b), cmt. (c) (1965).

Thus the trial justice should determine whether the law imposes a legal duty upon the defendant in the particular factual circumstances presented in any given case. In so doing, however, the trial justice may require assistance from the trier of fact if the duty-triggering facts are disputed and the evidence shows that a reasonable jury could reach different conclusions on this issue. For example, a passerby who happens upon a drowning swimmer is under no legal obligation to render assistance, whereas the law will impose a duty to aid or rescue upon the person whose horseplay caused the swimmer to tumble off the pier. *See State v. McLaughlin,* 621 A.2d 170, 175 (R.I.1993) (common law generally imposes no duty to aid but does impose a duty if the defendant created the plaintiff's peril or if a special relationship exists); LaFave & Scott, *Criminal Law* § 3.3, at 202–07 (2d ed. 1986). Thus an essential predicate to the determination of whether a duty to rescue exists in that situation is the resolution of certain predicate facts showing the prior relationship between the plaintiff and the defendant and the circumstances that led to the plaintiff's immersion.

Similarly under Rhode Island law, a landowner owes a duty of reasonable care to a non-trespassing visitor,[7] a lesser duty to a discovered trespasser,[8] and no duty to the trespasser of whom she was unaware.[9] The question of what duty is owed is thus dependent on establishing the existence of historical facts concerning the status of the injured person's presence on the property (for example, as a guest or as a trespasser) and, if a trespasser, whether the defendant landowner was aware of the trespasser's presence on the property before the injury occurred. As the above-quoted Restatement recognizes, only the existence of "such facts" will give rise to a legal duty.

When in any given case the particular historical facts that define the legal duty are uncertain or contested and the evidence presented could support a finding either way by the jury, it is the court's function to determine and instruct the jury concerning what legal duty is owed to the plaintiff under the various alternative factual scenarios supported by the evidence. However, it is still

---

6. An ancient legal maxim neatly separates the court's responsibility from the jury's task as follows: *"ad quaestionem facti non respondent judices; ad quaestionem juris non respondent juratores"* (judges do not answer a question of fact; juries do not answer a question of law). 3 Coke, *Institutes,* * 460 (Thomas ed. 1826); *see also* Stephen A. Weiner, *The Civil Jury Trial and the Law–Fact Distinction,* 54 Cal.L.Rev. 1867, 1867 n. 3 (1966).

7. *See Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 333 A.2d 127 (1975) (imposing duty of reasonable care regardless of whether licensee, invitee, or trespasser).

8. *See Tantimonico v. Allendale Mutual Insurance Co.,* 637 A.2d 1056, 1061 (R.I.1994) (limiting *Mariorenzi* with respect to trespassers and readopting the common law rule).

9. *See Wolf v. National Railroad Passenger Corp.,* 697 A.2d 1082, 1085 (R.I.1997) (railroad owes no duty at common law to trespasser except to refrain from willful or wanton conduct once trespasser is discovered); *New England Pretzel Co. v. Palmer,* 75 R.I. 387, 394, 67 A.2d 39, 43 (1949) (stating common law rule).

the function of the jury to determine the existence of those predicate facts that trigger the presence of the legal duty.[10] The court should not arrogate to itself the function of determining such facts under the guise of deciding what legal duty (if any) is owed to the plaintiff; nor should the trial justice abdicate his or her responsibility to say what duty the law imposes if the jury finds that certain duty-triggering facts are proven.

In order to strike the proper balance between these roles, alternative jury instructions may be given to the jury. *See* Restatement (Second) of Torts § 328B, cmt.(e) ("[w]here the existence of the duty will depend upon the existence or non-existence of a fact as to which the jury may reasonably come to either one of two conclusions—as for example, whether the trespasser was in fact discovered—then it becomes the duty of the court to instruct the jury as to the defendant's duty, or absence of duty, if either conclusion as to such fact is drawn"); *cf.* Fleming James, Jr., *Functions of Judge and Jury in Negligence Cases,* 58 Yale L.J. 667, 681 (1949) (suggesting similar approach). Similarly, the court could use a special verdict form to have the jury determine the existence vel non of the predicate facts, with the court then dismissing the action if the facts upon which the duty depends have not been proven. *See* Stephen A. Weiner, *The Civil Jury Trial and the Law–Fact Distinction,* 54 Cal.L.Rev. 1867, 1869 (1966).

Here the existence of a special duty running from the city to Kuzniar depended upon plaintiff's establishing the existence of the following duty-triggering circumstances: (1) one or more city officials had some form of prior contact with or other knowledge about Kuzniar or her situation before the alleged negligent act (the issuance of the second permit) occurred, (2) city officials thereafter took some action directed toward Kuzniar or her interests or failed to act in some way that was potentially injurious to Kuzniar's person or property, and (3) injury to Kuzniar

or her interests was a reasonably foreseeable consequence of the city's action or inaction. *See Quality Court Condominium Association,* 641 A.2d at 750–51; *Catri v. Hopkins,* 609 A.2d 966, 968 (R.I.1992); *Knudsen,* 490 A.2d at 978.

If the facts are not genuinely disputed, the court may proceed to determine the existence vel non of any legal duty without assistance from the trier of fact. *See, e.g., Banks,* 522 A.2d at 1225 (applying undisputed historical facts upon summary judgment to policy factors underlying existence of legal duty). Thus, if the trial justice had concluded that a reasonable jury, relying upon the evidence presented in this case, could not have differed concerning whether any one or more of these predicate special-duty factors existed, he or she should have so found and ruled as a matter of law on that issue. But if the trial justice was of the opinion that reasonable minds could differ about whether the evidence adduced at trial supported or refuted one or more of the above-referenced factual matters, the court should have submitted these disputed issues to the jury for its determination. *See* Restatement (Second) of Torts § 328C ("[i]n an action for negligence the jury determines, in any case in which different conclusions may be reached on the issue: (a) the facts * * * ").

■ When disputed factual issues must be submitted to the jury in this type of case, one proper course of action would be to give instructions framed in the alternative, telling the jurors that a duty is imposed by law upon the city if they should find that certain facts have been shown to exist by a preponderance of the evidence but that no duty is imposed (and the jury should return a verdict in favor of the defendant municipality) if the jury finds that those disputed facts have not been established by a preponderance of the evidence. Thus a hypothetical jury instruction might be phrased in these terms: "If you find that a preponderance of the evidence

10. "[I]t is often said that the court decides whether the defendant owed to plaintiff any duty to use due care at all * * *. Yet the general rule has too often been stated without enough critical appraisal. The duty issue, like any other, can be broken down into (a) rules and (b) the application of those rules to the concrete facts of a given case. Here as elsewhere the court lays down the rules. But the application of those rules to particular facts should be, and in fact usually is, committed to the jury on the duty issue as upon any other." F. Harper, et al., The Law of Torts § 18.8, at 743 (2d ed. 1986); *see also* W. Prosser, Handbook of the Law of Torts § 37, at 205 (4th ed. 1971).

shows that A, B, and C facts were present in this case [where A, B, and C are the disputed facts predicate to a special duty of care] then the city was under a duty to exercise reasonable care toward the plaintiff in the issuance of the second remodeling permit; however, if you find that the plaintiff has not proven A, B, and C by a preponderance of the evidence, then the city had no duty to the plaintiff in issuing the second permit and you must therefore return a verdict for the city." Alternatively the trial justice could employ a special verdict form asking the jury to indicate whether each of the disputed predicate facts has been established and, if so, whether any defendant breached the duty of care that was owed in such circumstances. The instructions used in this case, however, left everything up to the jury and thereby abdicated the court's role in making this duty determination.

### Conclusion

Given the importance of the duty question as an element of the plaintiff's negligence claim, we cannot say that this error was harmless. Accordingly, we sustain the plaintiff's appeal, vacate the Superior Court's judgment, and remand the case to the Superior Court for a new trial consistent with this opinion.

BOURCIER, J., did not participate.