Anthony DiCIANTIS

v.

Ashbel T. WALL et al.

No. 2001–28–Appeal.

Supreme Court of Rhode Island.

April 25, 2002.

---

2. *See Marr Scaffolding Co. v. Fairground*   *Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996).

Anthony DelBonis, Providence, for Plaintiff.

Paul S. Mancini, Warwick, Michael B. Grant, Cranston, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The plaintiff, Anthony DiCiantis (plaintiff), appeals from a judgment of the Superior Court dismissing his civil rights action brought pursuant to 42 U.S.C. § 1983. This case came before the Court for oral argument on April 8, 2002, pursuant to an order that directed both parties to appear to show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts pertinent to this appeal are as follows.

### I

### Facts and Travel

In October 1999, plaintiff, an inmate at the Adult Correctional Institutions (ACI), filed a complaint in Superior Court alleging that defendants George A. Vose, Jr.,[1] then director of the Department of Corrections (DOC), and other prison personnel

---

1. Ashbel T. Wall has since replaced George A. Vose, Jr. Thus his name has been added to the caption.

(collectively referred to as defendants) failed to comply with the *Morris* Rules[2] when detaining plaintiff in administrative segregation. Specifically, plaintiff alleges that he was placed in administrative segregation in excess of thirty days without written notice of the charges against him. According to plaintiff, the *Morris* Rules require that he be given written notice and prohibit defendants from placing plaintiff in administrative segregation in excess of thirty days. Furthermore, plaintiff alleged that one day before his release from segregation, he was brought before the classification board and reclassified to maximum security. He was not allowed to present witnesses on his behalf. The next day he was returned to medium security, and no mention was made of the alleged reclassification to maximum security.

█ The defendants filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) of the Superior Court Rules of Civil Procedure for lack of subject matter jurisdiction. The matter was heard on July 25, 2000. After hearing the arguments of the parties, the hearing justice reserved her decision, pending further research. On August 7, 2000, the hearing justice granted defendants' motion without explanation.[3] The plaintiff timely appealed.

## II

### Jurisdiction of the Superior Court

█ At the hearing, the parties discussed two issues. First, the trial justice sought to determine whether the Superior Court had jurisdiction over plaintiff's complaint to the extent that plaintiff was attempting to bring a contempt action against defendants. The defendants argued that plaintiff's claims belonged in federal court pursuant to this Court's decision in *L'Heureux v. State Department of Corrections,* 708 A.2d 549, 552 (R.I.1998).

In *L'Heureux,* we addressed whether the Rhode Island Administrative Procedures Act (APA), found in G.L.1956 chapter 35 of title 42, was applicable to the review of ACI disciplinary and classification procedures or the promulgation of rules and regulations that govern the internal administration of the ACI. *L'Heureux,* 708 A.2d at 550. We held that the APA does not provide an appellate process whereby an ACI inmate may ask the Superior Court to review either a disciplinary or classification decision made by prison officials. *See id.* at 551–52. Furthermore, we stated that the *Morris* Rules, a creature unique to the DOC, "are binding upon the DOC and are enforceable for violation of such rules by contempt proceedings in the Federal District Court." *L'Heureux,* 708 A.2d at 552. Therefore, the trial justice was correct in ruling that the Superior Court has no jurisdiction over such a contempt proceeding.

In 2001, a year after the hearing justice faced the jurisdictional issue in this case, the United States District Court for the District of Rhode Island responded to *L'Heureux* in *Doctor v. Wall,* 143

---

2. The *Morris* Rules are "a highly structured body of rules that were initially established pursuant to a consent decree entered in *Morris . v. Travisono,* 310 F.Supp. 857 (D.R.I. 1970)." *L'Heureux v. State Department of Corrections,* 708 A.2d 549, 550 (R.I.1998). The rules, which govern internal disciplinary and classification procedures at the ACI, have since been modified and reissued. *See id.*

3. The trial justice in this case did not provide an explanation for her decision granting defendants' motion to dismiss. Therefore, it is unclear whether she did so for lack of jurisdiction or for failure to state a claim. We address both possibilities. In doing so, we reiterate the importance of providing adequate rationale to ensure accurate appellate review. *See Anderson v. Botelho,* 787 A.2d 468, 471–72 (R.I.2001); *BHG, Inc. v. F.A.F., Inc.,* 784 A.2d 884, 886–87 (R.I.2001).

F.Supp.2d 203, 204–05 (D.R.I.2001). The *Doctor* court concluded that although this Court was perfectly entitled to prohibit inmates from pursuing appeals from disciplinary and classification decisions via the APA as a matter of state law, this Court was "clearly mistaken" when it "made the gratuitous statement that a violation of the *Morris* Rules could form the basis of a cause of action for contempt in the United States District Court for the District of Rhode Island." *Doctor*, 143 F.Supp.2d at 204–05 (citing *Cugini v. Ventetuolo*, 781 F.Supp. 107 (D.R.I.1992) and *Cugini v. Ventetuolo*, No. 92–1092, 966 F.2d 1440, 1992 WL 144699 (1st Cir.1992) (affirming district court holding that ACI inmates have no cause of action in the Federal District Court for contempt against DOC personnel for *Morris* Rules violations)). Because this holding does not control this Court, we respectfully disagree with the Federal District Court opinion in *Doctor* and reaffirm our previous holding in *L'Heureux*. The *Morris* Rules were born in the federal court in the context of a consent judgment and that is where they should be raised and laid to rest.

## III

### 42 U.S.C. § 1983 Claim

■ The plaintiff attempts to circumvent *L'Heureux* by disguising his contempt action as a claim under 42 U.S.C. § 1983. It is undisputed that the Superior Court has concurrent jurisdiction with the federal courts over civil rights actions pursuant to 42 U.S.C. § 1983. *See Licht v. Quattrocchi*, 454 A.2d 1210, 1211 (R.I.1982). However, plaintiff cannot rely on the *Morris* Rules, arguing that they create a protected liberty interest, as the basis for his 42 U.S.C. § 1983 claim. We have made clear that we will not entertain appeals from alleged *Morris* Rules violations. *See L'Heureux*, 708 A.2d at 553; *Bishop v. State*, 667 A.2d 275, 278 (R.I.1995) (holding

that the director of the DOC has "unfettered discretion" in making classification decisions).

■ "The standard for granting a motion to dismiss is a difficult one for the movant to meet. 'When ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a plaintiff's favor.'" *Pellegrino v. Rhode Island Ethics Commission*, 788 A.2d 1119, 1123 (R.I. 2002) (quoting *Rhode Island Affiliate, American Civil Liberties Union, Inc. v. Bernasconi*, 557 A.2d 1232, 1232 (R.I. 1989)). If it then "appears beyond a reasonable doubt that a plaintiff would not be entitled to relief under any conceivable set of facts," the motion may be granted. *Id.* (quoting *Estate of Sherman v. Almeida*, 747 A.2d 470, 473 (R.I.2000)). "When this Court reviews a trial justice's granting of a Rule 12(b)(6) motion, we assume that the allegations contained in the complaint are true, and examine the facts in the light most favorable to the nonmoving party." *Id.* (quoting *Estate of Sherman*, 747 A.2d at 473).

Even if plaintiff were permitted to transform the *Morris* Rules into a *per se* liberty interest, he has failed to meet the threshold established by the United States Supreme Court in *Sandin v. Conner*, 515 U.S. 472, 485–86, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418, 431 (1995).

■ To state a claim under 42 U.S.C. § 1983, a plaintiff must "[f]irst * * * allege * * * that some person or state governmental entity, while acting under color of state law, has deprived him of a federal right secured by federal law or constitution. Second, the plaintiff must identify the federal right alleged to have been violated." *Brunelle v. Town of South Kingstown*, 700 A.2d 1075, 1081 (R.I.1997) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101

S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981)). In the instant case, there is no question that plaintiff has fulfilled the first prong, by alleging that defendants are various ACI prison officials, acting under color of state law.

■ To satisfy the second prong, plaintiff alleges that defendants have violated his Fourteenth Amendment right to due process. The Fourteenth Amendment protects people from the deprivation "of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Claims of due process violations are examined in two steps. *See Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 459–60, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506, 514 (1989). First, a plaintiff must have a protected liberty or property interest. *See id.* at 460, 109 S.Ct. at 1908, 104 L.Ed.2d at 514 (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548, 557–58 (1972)). Only then do we inquire whether the procedures afforded were "constitutionally sufficient." *See id.* at 460, 109 S.Ct. at 1908, 104 L.Ed.2d at 514 (citing *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675, 688 (1983)).

■ "[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it. Protected liberty interests 'may arise from two sources—the Due Process Clause itself and the laws of the States.' " *Id.* at 460, 109 S.Ct. at 1908, 104 L.Ed.2d at 514 (quoting *Hewitt*, 459 U.S. at 466, 103 S.Ct. at 869, 74 L.Ed.2d at 685). In *L'Heureux*, this Court held that there is no constitutional liberty interest in prison discipline proceedings unless those proceedings resulted in an "atypical and significant hardship being imposed on the prisoner that would present a dramatic departure from the basic conditions of his or her incarceration." *L'Heureux*, 708 A.2d at 552 (citing *Sandin*,

515 U.S. at 484–86, 115 S.Ct. at 2300–01, 132 L.Ed.2d at 430–31). By adopting *Sandin*, we implicitly accepted that Court's rationale for rejecting a prisoner's attempt to create a *per se* liberty interest in prison regulations. The Supreme Court noted that:

"By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges. Courts have, in response, and not altogether illogically, drawn negative inferences from mandatory language in the text of prison regulations. [For example,] [t]he Court of Appeals * * * in this case * * * inferred from the mandatory directive that a finding of guilt 'shall' be imposed under certain conditions the conclusion that the absence of such conditions prevents a finding of guilt." *Sandin*, 515 U.S. at 481, 115 S.Ct. at 2299, 132 L.Ed.2d at 428.

■ The Court then rejected such an approach because "in the case of a prison regulation primarily designed to guide correctional officials in the administration of a prison * * * such regulations [are] not designed to confer rights on inmates." *Id.* at 481–82, 115 S.Ct. at 2299, 132 L.Ed.2d at 428. Furthermore, it exhausts federal court resources by "squandering judicial resources with little offsetting benefit to anyone * * * [and] run[s] counter to the view expressed in several of our cases that federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Id.* at 482, 115 S.Ct. at 2299, 132 L.Ed.2d at 429 (citing *Wolff v. McDonnell*, 418 U.S. 539, 561–63, 94 S.Ct. 2963, 2977–78, 41 L.Ed.2d 935, 953–55 (1974), and *Hewitt*,

459 U.S. at 470–71, 103 S.Ct. at 870–71, 74 L.Ed.2d at 687–88, and *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629, 638–39 (1977)). In discarding this practice, the Court reasoned that allowing courts to find protected rights within prison regulations creates the possibility that "[s]tates may avoid creation of 'liberty' interests by having scarcely any regulations, or by conferring standardless discretion on correctional personnel." *Sandin,* 515 U.S. at 482, 115 S.Ct. at 2299, 132 L.Ed.2d at 429.

Thus, we conclude that the plaintiff has failed to state a claim under 42 U.S.C. § 1983 because he has not established that he has a liberty interest in the ACI disciplinary proceedings, and therefore he has no constitutional right of judicial review of the same. Moreover, the plaintiff has failed to demonstrate that the administrative segregation, the appearance before the classification board, and his inability to present witnesses constituted an atypical and significant hardship such that there has been a dramatic departure from the basic conditions of his incarceration. Furthermore, with respect to the plaintiff's claim that his appearance before the classification board and the DOC's alleged failure to permit him to present witnesses on his behalf violated the *Morris* Rules, we conclude that the plaintiff could not state a 42 U.S.C. § 1983 claim because the plaintiff did not suffer the harm that allegedly was done to him, namely, the reclassification to maximum security. It is uncontroverted that when he was returned to the general prison population, he was returned to a medium, not a maximum, security facility.

### Conclusion

Accordingly, the plaintiff's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers of the case are remanded to the Superior Court.