[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter comes before the Court on the municipal Defendants' Motion to Dismiss Counts IV, VI, and XI of Plaintiff's Third Amended Complaint, ("the Complaint") pursuant to Rule 12(b)(6) of the Rhode Island Rules of Civil Procedure.
 Facts and Travel
This is an action wherein Plaintiff claims, inter alia,[1]
intentional infliction of emotional distress (Count IV), negligent supervision, hiring, and training (Count VI), and recovery under42 U.S.C. § 1983 (Count XI).
Tori-Lynn Heaton (hereinafter "Plaintiff") is a Cranston police officer and the ex-wife of Joseph Fillion (hereinafter "Fillion"). In addition to Fillion, the City of Cranston (hereinafter "City"), the Cranston Police Department (hereinafter "Department"), and Joseph Granata, the City Treasurer, have been named as Defendants. The municipal Defendants have filed the instant motion to dismiss with respect to Counts IV, VI, and XI, asserting that Plaintiff has not alleged facts in her Complaint that would entitle her to recovery for these claims.
The Complaint alleges that while married and employed as Cranston police officers, Fillion subjected Plaintiff to domestic abuse while off-duty. In response, the Plaintiff obtained a protective order on March 26, 1999. While the protective order was in force, Fillion was permitted back on the police force and issued a weapon. Allegedly, on July 23, 1999, Fillion trespassed on the Plaintiff's property and attacked her and a guest. It is undisputed that both Fillion and the Plaintiff were off duty at the time of the alleged attack, and that the restraining order against Fillion was still in place. The Complaint further alleges that after the attack on July 23, 1999, the Cranston Police Department refused to take Fillion into custody and allowed its police officers to participate in the sale of tickets to a fundraiser for Fillion's defense.
Subsequent to the alleged July 23, 1999 incident, Plaintiff applied for injured on duty ("IOD") status to receive compensation for her injuries. The municipal Defendants denied Plaintiff's request for IOD status on the basis that the events at issue occurred when both Plaintiff and Fillion were off duty. Plaintiff proceeded to file a grievance of that decision, which was denied at arbitration.
On March 22, 2002, Plaintiff filed this Complaint with the Superior Court seeking recovery for her injuries based on ten different common law and statutory claims. Plaintiff has since amended her Complaint three times to include thirteen common law and statutory claims. The claims that are now before the Court are set forth in the Plaintiff's Third Amended Complaint, filed on February 3, 2004.
 Standard of Review
In determining whether to grant a Rule 12(b)(6) motion to dismiss, this Court "assumes the allegations contained in the complaint to be true and views the facts in the light most favorable to the plaintiffs." Giulianov. Pastina, Jr., 793 A.2d 1035, 1036-37 (R.I. 2002) (quoting Martin v.Howard, 784 A.2d 291, 297-98 (R.I. 2001)). This Court should not grant the motion "unless it appears to a certainty that [the plaintiffs] will not be entitled to relief under any set of facts which might be proved in support of [their] claim." Id. at 1037 (quoting Bragg v. Warwick ShoppersWorld, Inc., 227 A.2d 582, 584 (R.I. 1967)). "The standard for granting a motion to dismiss is a difficult one for the movant to meet." Diciantisv. Wall, 795 A.2d 1121 (R.I. 2002).
 Suit Against the Police Department
Defendants argue that the Cranston Police Department is not a proper party defendant because it is a department of city government. It is Defendants' position that the City of Cranston Police Department should be dismissed from the case because the Treasurer, and not the Department, is the appropriate legal entity to be sued in this case. Additionally, Defendants assert that the Department is not a legal entity with the capacity to be sued.
In Peters v. Jim Walter Door Sales of Tampa, Inc., 525 A.2d 46 (R.I. 1987), the Rhode Island Supreme Court held that, for purposes of claims, a school committee is a subdivision of the city. Therefore, the city itself and not the school committee were deemed to be the proper party defendant. Similarly, as the Cranston Police Department is only a department or subdivision of the municipality, this Court finds that the Police Department is not a proper party defendant in this suit, and the motion to dismiss filed on its behalf should be granted.
 Intentional Infliction of Emotional Distress
Count IV of Plaintiff's Complaint alleges intentional infliction of emotional distress by the Cranston Police Department in permitting and/or condoning the sale of tickets to a fundraiser for Fillion's defense. Additionally, the Complaint asserts that the Department engaged in extreme and outrageous conduct by refusing to take Fillion into custody after he attacked Plaintiff and her friend on July 23, 1999. According to Plaintiff, by permitting its officers to act contrary to the Department's normal protocol in domestic abuse cases and to actively support Fillion through condoning fundraising for his defense, the Department communicated to Plaintiff that she, as a fellow officer, would not have the support of the Department.
It is well settled that in order "to prevail on a claim of intentional infliction of emotional distress, a plaintiff must show `extreme and outrageous conduct on the part of the defendant.'" Jalowy v. The FriendlyHome, Inc., 818 A.2d 698, 706 (R.I. 2003) (quoting DiBattista v. State,808 A.2d 1081 (R.I. 2002)). The Supreme Court reiterated in that case the very high standard set forth in the Restatement (Second) Torts § 46 (1965) with regard to the evidence necessary to satisfy this element of the claim:
 "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by `malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" Jalowy, 818 A.2d at 707
(quoting Swerdlick v. Koch, 721 A.2d 849, 863 (R.I. 1998)) (quoting Restatement (Second) Torts, § 46 cmt. d at 73).
Whether defendants' conduct meets this standard is a matter of law to be decided by the court. Id. However, in deciding this question of law, the court "may need to rely on the jury to determine whether the party bearing the burden of proof has proven the existence of certain duty-triggering facts." Id. (citing Kuzniar v. Keach, 709 A.2d 1050,1055-56 (R.I. 1998)).
In Jalowy, the court decided that the trial justice properly concluded that the defendant was entitled to judgment as a matter of law with respect to plaintiff's claim of intentional infliction of emotional distress. The claim therein arose by reason of the defendant's decision to preclude visits by the son of an elderly resident, ostensibly due to the alleged disruptive behavior of the plaintiff.
The trial justice in Jalowy had the benefit of a jury finding that the action of the defendant was non-retaliatory.[2] In contrast, this issue comes up in the instant matter in the context of a Rule 12(b)(6) motion to dismiss. Thus, a jury has yet to consider the facts to determine if they meet the threshold to trigger the duty set forth in Jalowy. Until a jury determines what the facts are relative to the conduct alleged by the Plaintiff to be "extreme and outrageous," this Court would be acting prematurely in dismissing this claim under the Jalowy standard. For that reason, the claim set forth in Count IV of the Complaint should survive this Rule 12(b)(6) motion to dismiss.
 Negligent Hiring, Training, and Supervision
Defendants' Motion to Dismiss Count VI of Plaintiff's Complaint, alleges that the Defendants are liable for negligent hiring, training, and supervision of Fillion. Specifically, paragraph 53 of Plaintiff's Complaint states:
 "On information and belief, Plaintiff alleges all acts of which he complains occurred outside the scope and course of Fillion's employment, but are related to the terms and condition of Fillion's employment in that the Cranston Police Department did not take protective action when it became aware of Fillion's propensity to violence but rehired him."
It is Plaintiff's position that the Defendants' failure to responsibly hire, train, and supervise employees in such a manner as to reduce the chance of police misconduct and/or abusive behavior, resulted in Plaintiff's psychological and physical harm.
In Welsh Manufacturing v. Pinkerton's, our Supreme Court quoted favorably from the D.C. Appellate Court's decision in Fleming v.Bronfin:
 "`One dealing with the public is bound to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee.
 When an employer neglects this duty and as a result injury is occasioned to a third person, the employer may be liable even though the injury was brought about by the willful act of the employee beyond the scope of his employment.'" 474 A.2d 436, 440 (R.I. 1984) (quoting Fleming v. Bronfin, 80 A.2d 915, 917
(D.C. Mun.App. 1951)).
Although the employer is bound to adhere to this duty, our Supreme Court also recognized the following Restatement principles:
 "`A person conducting an activity through servants or agents is subject to liability for harm resulting from his conduct if he is negligent or reckless. . . . (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others.'" Welsh, 474 A.2d at 440 (quoting 1 Restatement (Second) Agency § 213 at 458 (1958)).
Our Supreme Court's reliance on the case of Fleming v. Bronfin,80 A.2d at 917, is instructive. In Fleming, the D.C. Appellate Court imposed a duty on the employer to use reasonable care in selecting a delivery man who made deliveries to homes and came in contact with customers. Id. In reaching this finding, the Court stressed that the employee's duties led him to make this contact, and while his actions were outside the scope of his employment, they were carried out in the performance of his duties. The Fleming Court went on to cite Restatement § 213 and § 302:
 "In Restatement, Agency, § 213, Comment d, it is said that `if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity.' And Restatement, Torts, § 302, Comment n, says one is liable `where he has brought into contact with the other, or intentionally caused the other to associate himself with, a person whom the actor knows or should know to be peculiarly likely to commit intentional or reckless misconduct; the association being one which creates temptation to, or affords peculiar opportunity for, such misconduct.'" Fleming, 80 A.2d at 917
(quoting 1 Restatement Agency § 213 at 466 (1933) and Restatement Torts § 302 at 822-23 (1934)).
Based on the reasoning of this precedent, the Plaintiff's negligent hiring, supervision, and training claims must fail. The municipal Defendants did not cause Fillion to come in contact with Plaintiff. This case does not present a situation where the Department sent Fillion out as an officer to conduct police business with knowledge of his allegedly abusive propensities. Rather, this Court is presented with undisputed facts showing that both parties were off duty when the complained of conduct occurred, and that this conduct was not related to police business.
Moreover, Plaintiff's reliance on Mainella v. Staff Builders IndustrialServices, Inc., et al., 608 A.2d 1141 (R.I. 1992), is misplaced. InMainella, our Supreme Court stated that the liability of an employer in the negligent supervision or hiring of an unfit employee is an entirely separate and distinct basis from the liability of an employer under the doctrine of respondent superior. Id. at 1145. However, nothing in the court's analysis even remotely suggests that employers can be held liable for negligent supervision or hiring when the acts complained of occur while the employee is off duty and carrying out personal matters unrelated to the employer's business. If this Court were to permit such a result, an employer could be held liable for negligent supervision or hiring anytime one of its employees acts inappropriately in his personal life wholly apart from the duties for which the employee was hired.
Accordingly, this Court will dismiss Plaintiff's claim of negligent hiring, training and supervision against the municipal defendants.
 42 U.S.C. § 1983 Claim
Count XI of Plaintiff's Complaint alleges a violation of Plaintiff's constitutional rights under 42 U.S.C § 1983. It is Plaintiff's contention that the City's deliberate indifference toward Defendant Fillion's acts of off-duty domestic violence was in furtherance a municipal policy that deprived Plaintiff of her liberty and property rights and interests.
To sustain a claim under 42 U.S.C. § 1983, it must be alleged that "a person, while acting under color of state law" deprived the plaintiff of a federal constitutional or statutory right. See 42 U.S.C. § 1983. InMonell v. Department of Social Services, 436 U.S. 658 (1978), the United States Supreme Court held that cities and other political subdivisions are "persons" within the meaning of § 1983. Additionally, the Monell
Court held that these entities may be sued for constitutional deprivations based on governmental custom, even if the custom complained of has not received formal approval through the government's official decision-making channels. Id. The key question is whether the municipal policy or custom at issue is the motivating force behind the constitutional violations.
In the instant case, Plaintiff has not alleged facts which would demonstrate that her injuries were the result of an unconstitutional municipal policy. Plaintiff's allegation that she was deprived of her liberty and property rights due to Fillion's attack on July 23, 1999, does not reflect any type of policy on the part of the municipality. As previously stated, this attack occurred while both Plaintiff and Fillion were off duty and was not in any way related to their job performance within the police department. Moreover, Plaintiff's allegation that she was deprived of her liberty due to her colleagues openly conducting fund-raising for Fillion during active duty assignments does not equate to a municipal policy relative to domestic abuse. These allegations concern specific instances of alleged inappropriate behavior on the part of certain officers within the police department. The United States Supreme Court has unmistakably held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," when that activity is not in furtherance of a policy that promotes behavior that is unconstitutional. Monell, 436 U.S. at 694,98 S.Ct. at 2037, 56 L. Ed.2d at 638.
Furthermore, Plaintiff's contention that the Department's deliberate indifference to her situation constituted a municipal policy is unavailing, as Plaintiff has not alleged facts sufficient for a "failure to train" claim under § 1983. In City of Canton v. Harris, the United States Supreme Court held that "there are limited circumstances in which an allegation of a `failure to train' can be the basis for liability under § 1983." 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412,425 (1989). In that case, the plaintiff had alleged that due to the inadequacy of police training, the City of Canton and its officials violated plaintiff's constitutional right to receive medical attention while in police custody. Id., 489 U.S. at 382, 109 S.Ct. at 1201,103 L. Ed.2d at 422-23. After the jury ruled in the plaintiff's favor, the city made a motion for judgment notwithstanding the verdict, claiming that a municipality can only be found liable under § 1983 where the policy in place is itself unconstitutional. Id. Rejecting the city's narrow interpretation of § 1983, the Canton Court established the following standard for evaluating valid policies alleged to have been unconstitutionally applied:
 "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact. . . . . Only where a municipality's failure to train its employees in a relevant respect evidences a `deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city `policy or custom' that is actionable under § 1983. . . . Only where a failure to train reflects a `deliberate' or `conscious' choice by a municipality — a `policy' as defined by our prior cases — can a city be liable for such a failure under § 1983." Id., 489 U.S. at 388-89, 109 S.Ct. at 1204-05, 103 L. Ed.2d at 426-27.
In order to survive a motion to dismiss under the aforementioned standard, Plaintiff must allege facts which would support a finding "that the City employee's conduct was the result of the City's failure to train employees in the equal protection of protective services to female victims of violent crimes and/or to victims of domestic violence under circumstances that would make it obvious to City officials that not providing such training would likely result in a violation of the equal protection rights of such victims." Williams v. City of Montgomery,48 F. Supp.2d 1317, 1332 (M.D. Ala. 1999) (citing Monell,436 U.S. at 694, 98 S.Ct. at 2037, 56 L. Ed.2d at 638). Although Plaintiff herein points to a particular incident of alleged improper procedure in a domestic abuse case, there are no facts to sustain a finding that this incident is indicative of a broader policy or training deficit. Additionally, as this Court has already noted, the municipality had no duty under § 1983 or otherwise to train Fillion not to engage in domestic abuse toward his spouse. As Plaintiff's Complaint does not allege facts supportive of a finding of the municipality's deliberate indifference to the rights of persons with whom the police come into contact in the course of their official duties, Plaintiff cannot, as a matter of law, prevail on her claim of constitutional deprivation.
Accordingly, this Court will dismiss Plaintiff's § 1983 claim against the municipal Defendants.
 Conclusion
For the foregoing reasons, this Court grants Defendants' Motion to Dismiss with respect to Counts VI and XI of Plaintiff's Complaint, and denies Defendants' Motion to Dismiss with respect to Count IV of Plaintiff's Complaint. The parties will present an order reflecting the disposition of this motion.
[1] The other claims set forth in Plaintiff's Complaint include claims for assault, battery, invasion of privacy, trespass, false imprisonment, prima facie tort, and violations of the Fair Employment Practice Act (G.L. 1956 § 28-5-1, et seq.), and the R.I. Civil Rights Act (G.L. 1956 § 42-112-1 and 2).
[2] "Thus, in this case, a finding by the jury that defendants had retaliated against Jalowy for complaining to the regulatory authorities about the nurses at the home, may well have sufficed to warrant the jury's returning a verdict for Jalowy on the intentional-infliction claim." Jalowy, 818 A.2d at 707.