Dawn TEDESCO et al.

v.

Richard F. CONNORS,[1] in his capacity as finance director and purchasing agent of the Town of Johnston et al.

No. 2003–469–Appeal.

Supreme Court of Rhode Island.

April 27, 2005.

---

1. Leo Fox (Fox), in his capacity as finance director and purchasing agent of the Town of Johnston, was named as defendant. Fox has since vacated that office and was replaced by Richard F. Connors. The caption has been changed to reflect the identity of the current finance director.

Thomas M. Petronio, Greenville, for Plaintiff.

Anne M. Turilli, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

WILLIAMS, Chief Justice.

The plaintiff, Dawn Tedesco (plaintiff), and her husband Frank Tedesco, appeal from a judgment as a matter of law in favor of the defendant, the Rhode Island Department of Transportation (DOT or defendant), dismissing her negligence cause of action. The trial justice ruled: (1) the public duty doctrine barred the plaintiff's suit; and (2) the egregious conduct exception was inapplicable. This case came before the Supreme Court for oral argument on September 29, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons explained in this opinion, we reverse the judgment of the Superior Court.

## I

### Facts and Travel

In the early morning of June 30, 1997, while plaintiff rode her bicycle outfitted with thin racing tires along Atwood Avenue in Johnston, Rhode Island (town), her tire slipped into a sewer grate that had bars running parallel to the road (parallel-bar sewer grate). She suffered various injuries, including damage to her mouth and teeth, and subsequently brought suit against Leo Fox, in his capacity as finance director of Johnston, and William Ankner, in his capacity as the director of DOT. After settling with the town, plaintiff proceeded to trial, claiming DOT negligently failed to make Atwood Avenue safe for a bicycle to traverse by failing to install bicycle-safe sewer grates, such as a "waffle" sewer grate, which has bars running both parallel with and perpendicular to the road.

The crux of plaintiff's case centers on a DOT design-policy memorandum dated June 21, 1982, outlining defendant's plan to replace parallel-bar sewer grates on Rhode Island highways. The impetus for this memorandum was "reports indicat[ing] that the parallel bar grates, although excellent in terms of operational efficiency, present hazards to bicycles." In accord with this memorandum, DOT replaced parallel-bar sewer grates with bicycle-safe sewer grates as it reconstructed state roadways. Prior to June 30, 1997, DOT had not yet reconstructed the section of road near the corner of Atwood Avenue and Central Avenue.

At the close of plaintiff's case, DOT moved for judgment as a matter of law on two grounds: first, that the public duty doctrine barred plaintiff's suit and, second, that DOT has no legal duty to make its roadways safe for bicycles. The trial justice granted DOT's motion because he determined the public duty doctrine was applicable and that neither the special duty [2] nor the egregious conduct exceptions applied to this case. Thus, the public duty doctrine rendered DOT immune from

---

**2.** The plaintiff does not assert to this Court that the special duty exception to the public duty doctrine applies. Thus, that argument is waived.

plaintiff's suit. The trial justice did not address defendant's argument that the local municipalities, rather than the state, owe a duty to make roadways safe for bicycles pursuant to G.L.1956 § 24–5–1. The plaintiff appeals, asserting that the trial justice erred in his holding that the egregious conduct exception did not salvage this case from the public duty doctrine.

## II

### Egregious Conduct Exception to the Public Duty Doctrine

### A

#### The Law on Egregious Conduct

Before proceeding to the precise issue presented on appeal, we first outline the general law governing the public duty doctrine and the egregious conduct exception.

■ A public duty doctrine analysis is a two-step inquiry. First, a court must determine whether the public duty doctrine applies to the facts of the case. The doctrine shields a governmental entity from liability only when that entity engages in activity that an individual ordinarily would not perform. *Martinelli v. Hopkins*, 787 A.2d 1158, 1167 (R.I.2001). The plaintiff does not challenge the trial justice's determination that the placement of sewer grates is an activity not normally undertaken by individuals or that it is a discretionary governmental function. *Id.*

■ The second step in this inquiry requires the court to focus on the applicability of the two exceptions to the public duty doctrine: "(1) when the governmental entity owes a 'special duty' to the plaintiff, (2) when the alleged act or omission on the part of the governmental entity [is] egregious." *Id.* (quoting *Schultz v. Foster–Glocester Regional School District*, 755 A.2d 153, 155 (R.I.2000)). The doctrine,

with its exceptions, "encourages 'the effective administration of governmental operations by removing the threat of potential litigation'" while remaining mindful of the need to foster a safe environment within the state. *Verity v. Danti*, 585 A.2d 65, 66 (R.I.1991) (quoting *Catone v. Medberry*, 555 A.2d 328, 333 (R.I.1989)).

■ The plaintiff alleges that the egregious conduct exception saves her claim from being barred by the public duty doctrine. When a governmental entity's conduct rises to a level of egregiousness, a plaintiff may pierce the "protective shell" afforded to that entity. *Catri v. Hopkins*, 609 A.2d 966, 968 (R.I.1992). To determine whether the governmental entity's conduct is egregious, a court will consider: (1) whether that entity created or allowed for the persistence of "circumstances that forced a reasonably prudent person into a position of extreme peril;" (2) whether that entity had "actual or constructive knowledge of the perilous circumstances;" and (3) whether that entity "having been afforded a reasonable amount of time to eliminate the dangerous condition, failed to do so." *Haley v. Town of Lincoln*, 611 A.2d 845, 849 (R.I.1992). Only after a plaintiff satisfies all these elements will a claim of governmental negligence survive dismissal under this exception. *Id.*

### B

#### Question of Fact or Question of Law

■ This Court adheres to the basic legal axiom, translated from Latin, that "judges do not answer a question of fact; juries do not answer a question of law." *Kuzniar v. Keach*, 709 A.2d 1050, 1055 & n. 6 (R.I.1998) (citing 3 Coke, *Institutes*, * 460 (Thomas ed. 1826)). The issue presented, therefore, is whether the determination of the applicability of the egregious conduct exception to the public duty doc-

trine is a question of law to be decided by a judge or a question of fact to be decided by a jury. We hold that such a determination is a mixed question of law and fact in which the trial justice determines whether a governmental entity's conduct rises to a level of egregiousness based on predicate findings of fact by the jury.

We have never expressly answered this precise issue of who makes a determination of egregious conduct. Some egregious conduct cases can be read to suggest that the determination is a question of fact, while others imply that it is a question of law. *Compare Houle v. Galloway School Lines, Inc.*, 643 A.2d 822, 827 (R.I.1994) (stating evidence offered by the plaintiff "present[ed] a question of fact" about whether North Smithfield owed a duty to the plaintiff) *with Catri*, 609 A.2d at 967–69 (affirming the motion justice's grant of summary judgment dismissing a plaintiff's suit asserting that the Town of South Kingstown and the state acted egregiously in removing stop signs from an intersection without installing a traffic signal despite evidence of numerous public requests to improve the safety of the intersection).

But this Court did confront an analogous issue when it analyzed the special duty exception to the public duty doctrine in *Kuzniar*. The issue presented there was whether a trial justice erred in submitting to the jury the question of whether the City of Warwick owed a duty to the plaintiff under the special duty exception. *Kuzniar*, 709 A.2d at 1054. First, we noted that "[t]he existence of a legal duty is purely a question of law, and the court alone is required to make this determination." *Id.* at 1055. In analyzing the nature of the special duty exception, however, we concluded that the determination of the legal duty owed to the plaintiff was based on certain "duty-triggering" facts. *Id.* at 1056. We fashioned the following rule of law to govern this mixed question of law and fact:

> "[T]he trial justice should determine whether the law imposes a legal duty upon the defendant in the particular factual circumstances presented in any given case. In so doing, however, the trial justice *may require assistance from the trier of fact* if the duty-triggering facts are disputed and the evidence shows that a reasonable jury could reach different conclusions on this issue." *Id.* at 1055. (Emphasis added.)

We expressly warned against a trial court "arrogat[ing] to itself the function of determining such [duty-triggering] facts under the guise of deciding what legal duty (if any) is owed to the plaintiff." *Id.* at 1056. Thus, when a plaintiff brings suit against a governmental entity based on the special duty exception, deciding that issue as a matter of law is only appropriate when no genuine issue of fact exists concerning each element of the special duty exception. *Id.*

Our previous characterization of the egregious conduct exception renders it indistinguishable from the special duty exception and our holding in *Kuzniar*. In determining that a suit based on the egregious conduct exception was not readily susceptible to dismissal on the merits before trial, we labeled both exceptions as "fact-intensive" inquiries. *Haley*, 611 A.2d at 850. The egregious conduct exception is a fact-intensive inquiry simply because it requires a determination of factual issues on which reasonable minds could differ. Specifically, the predicate facts inherent in an egregious conduct inquiry are whether the governmental entity created or allowed for the persistence of circumstances that forced a reasonably prudent person into a position of *extreme peril*, and then failed to remedy that peril in a *reasonable time*. When these facts genuinely are in dispute,

a determination of the applicability of the egregious conduct exception as a matter of law amounts to the judicial assumption of fact-finding responsibilities that concerned this Court in *Kuzniar*, 709 A.2d at 1056. Thus, we hold that a determination of the egregious conduct exception is a mixed question of law and fact and, therefore, a trial justice must allow a jury to find the predicate or duty-triggering facts, provided any exist, in making such a determination.

Our holding today should not be read as wholly barring a trial justice from determining the applicability of the egregious conduct exception as a matter of law. We reiterate our qualification in *Kuzniar*, 709 A.2d at 1056; "[i]f the facts are not genuinely disputed, the court may proceed to determine the existence vel non of any legal duty without assistance from the trier of fact." Thus, if a plaintiff fails to offer a legally sufficient evidentiary basis that would allow a reasonable juror to find for him or her on each of the three elements of egregious conduct, then the trial justice should determine that conduct is not egregious as a matter of law and dismiss the plaintiff's action. Similarly, if a plaintiff offers a legally sufficient evidentiary basis upon which no reasonable juror could conclude that the governmental entity's conduct was not egregious, then, in those limited circumstances, a trial justice should determine that conduct is egregious as a matter of law and instruct the jury solely on the law of negligence. *Cf. Verity*, 585 A.2d at 67 (holding, as a matter of law, that DOT's failure to remove a tree, which had been in place for "over 100 years," that completely obstructed a sidewalk and forced pedestrians to walk onto Route 44 constituted egregious conduct).

We also offer guidance to the trial court for instructing the jury on the egregious conduct exception in accordance with this rule of law. When instructing a jury on a negligence action involving the special duty exception, we have suggested that the trial justice build the questions of fact into the duty prong of negligence.

"[A] hypothetical jury instruction might be phrased in these terms: 'If you find that a preponderance of the evidence shows that A, B, and C facts were present in this case [where A, B, and C are the disputed facts predicate to a special duty of care] then the city was under a duty to exercise reasonable care toward the plaintiff * * *; however, if you find that the plaintiff has not proven A, B, and C by a preponderance of the evidence, then the city had no duty to the plaintiff * * * and you must therefore return a verdict for the city.'" *Kuzniar*, 709 A.2d at 1056–57.

Similarly, a jury instruction should incorporate the elements of egregious conduct into the elements of negligence. For example, the jury instruction could read: "In order to find the defendant's conduct is egregious, you must find (1) the defendant created or allowed for the persistence of circumstances that would force a reasonably prudent person into a position of extreme peril; (2) the defendant knew or should have known of the perilous circumstances; and (3) the defendant, after a reasonable amount of time to eliminate the dangerous condition, failed to do so. If the plaintiff fails to prove defendant's conduct was egregious by a preponderance of the evidence, you must return a verdict in favor of the defendant. If you do find that the defendant's conduct is egregious by a preponderance of the evidence, then, and only then, may you proceed to determine whether the defendant's egregious conduct was the proximate cause of any damages suffered by the

plaintiff, and the amount of those damages."[3]

## C

### Application of the Mixed– Question Rule

When reviewing a trial justice's decision on a motion for judgment as a matter of law, "this Court is bound by the same rules and standards as the trial justice." *Mills v. State Sales, Inc.*, 824 A.2d 461, 472 (R.I.2003). Under Rule 50(a)(1) of the Superior Court Rules of Civil Procedure, the trial justice may grant that motion only after "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue * * *." The trial justice then "considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party." *Mills*, 824 A.2d at 472 (quoting *Mellor v. O'Connor*, 712 A.2d 375, 377 (R.I. 1998)). "If, after such a review, there remain factual issues upon which reason-

able persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination." *Id.* If, however, "there are no relevant factual issues and 'defendant is entitled to judgment as a matter of law, then the trial justice should grant the motion and dismiss the complaint.'" *Filippi v. Filippi*, 818 A.2d 608, 617 (R.I.2003).

In finding for defendant as a matter of law, the trial justice's on-the-record recitation of both the law of egregious conduct and the facts of this case was conclusory. He failed to lay out the three elements of egregious conduct expressly. Instead, he relied on a single egregious conduct case in concluding that defendant's conduct was discretionary governmental activity and, therefore, not egregious.[4] In a passing reference to DOT's memorandum identifying the danger parallel-bar sewer grates represented to bicyclists, the trial justice found that defendant had no definite notice of the specific grate. Instead, he emphasized the fact that 20,000 to 30,000 grates line the roadways of Rhode Island in support of his conclusion that defendant's conduct was not egregious.[5]

---

3. The third element of egregious conduct, failure to remedy after a reasonable time, is akin to the second element of negligence, breach of duty. A trial justice may wish to clarify in his or her instructions: if the jury finds egregious conduct, then it need not find a separate breach of duty and, instead, may proceed to determine whether the governmental entity's egregious conduct was the proximate cause of plaintiff's injuries.

4. The trial justice relied on *Catri v. Hopkins*, 609 A.2d 966, 968–69 (R.I.1992), which held that the failure to install a traffic control signal at an intersection did not amount to egregious conduct. That opinion emphasized the "sufficient time necessary to implement the state's decision" and concluded "this court cannot invent liability from the slowest of actions." *Id.* at 968, 969. This case is

distinguishable from *Catri* in that the DOT memorandum establishes a fifteen-year time span between DOT's admitted knowledge of the danger and the accident. In light of the rule of law that we clarified today, that memorandum creates a question of fact about whether DOT failed to remedy the perilous condition in a reasonable time.

5. In viewing this fact in the light most favorable to plaintiff, the breadth of work relating to the replacement of sewer grates is not so daunting that it requires our holding, as a matter of law, that no reasonable juror could conclude that the failure to make roadways safe from the dangers of parallel-bar sewer grates was egregious. Upon remand, defendant is free to argue to the jury that the number of sewer grates throughout the state made it impossible to replace all parallel-bar

Viewing the trial justice's ruling in accord with the applicable standard of review, the trial justice's error becomes clear. To reiterate, the rule of law that we clarified today requires a trial justice, in determining the applicability of the egregious conduct exception, to submit the predicate or duty-triggering questions of fact to a jury when those facts are disputed and an evidentiary basis exists to support such a finding. In this case, plaintiff produced evidence of a DOT memorandum, *dated fifteen years prior to plaintiff's accident*, stating parallel-bar sewer grates presented a danger to bicyclists. The memorandum creates an evidentiary basis that could allow a reasonable juror to conclude that DOT created circumstances that would lead a reasonably prudent person into a position of extreme peril, that DOT had at least constructive knowledge of that specific peril, and that it then failed to remedy that peril after a reasonable time. Drawing all reasonable inferences in favor of plaintiff, a reasonable juror could conclude that defendant's conduct was egregious. Thus, the trial justice erred in dismissing plaintiff's claim at the close of her evidence.

## III

### G.L.1956 § 24–5–1 and Parallel–Bar Sewer Grates

 In its motion for judgment as a matter of law, DOT argued in the alternative that the state generally, and, thus, DOT specifically, owed no duty to make its roadways safe for bicyclists because § 24–5–1(b) expressly allocated that duty to lo-

cal municipalities. The argument posits that the express allocation to the local municipalities of the duty to keep roadways safe for bicycles, combined with the lack of any statutory language creating a parallel duty on the part of the state, warrants the conclusion that DOT has no such duty. In ruling in favor of defendant on the egregious conduct exception, the trial justice did not reach this question.

Section 24–5–1(b) prescribes the following duty: "In addition, the surfaces of all highways and causeways shall be maintained in such a state of repair as to make them safe for bicycles." We are asked to determine whether the statute should be read to place the duty to make Rhode Island roadways safe for bicycles solely on the shoulders of the local municipalities. Regardless of the confusing nature of the language of § 24–5–1(b) with respect to bicycles, we hold DOT has an affirmative duty to make state roadways safe from the dangers of parallel-bar sewer grates based upon its own announcement of a policy to replace them.

We discussed at length the interplay between the state and municipal governments in relation to the repair and maintenance of Rhode Island roadways in *Pullen v. State of Rhode Island,* 707 A.2d 686 (R.I.1998). In 1968 the City of Newport and DOT agreed that the state would construct and maintain America's Cup Avenue and the accompanying sidewalk "whereby the state assumed full responsibility for maintaining the roadway and its appurtenances." *Id.* at 687. At issue in that case was whether the city owed a duty to maintain a sidewalk which DOT had expressly

---

sewer grates in the fifteen years between the DOT memorandum and the accident. It is worthy of note, however, that the public duty doctrine and the law on egregious conduct should not be read as necessarily requiring that defendant replace every parallel-bar sewer grate in Rhode Island. *See Yankee v. Le-*

*Blanc,* 819 A.2d 1277, 1280 (R.I.2003) ("We have never held a municipality liable for its failure to implement a foolproof remedy and will not do so today."). For example, signs giving a bicyclist notice of the parallel-bar sewer grate could have remedied the perilous condition in the short term.

agreed to construct and maintain. *Id.* at 688. We framed our discussion as follows:

"The establishment and maintenance of public highways are functions of the state. * * * Supervision and control over public highways * * * may be exercised directly by the state or delegated to subordinate governmental agencies, such as municipalities, as the Legislature deems fit. * * * Any such delegation may be revoked by the Legislature at will." *Id.* at 689.

The plaintiff contended that the city retained the duty to make its sidewalks safe under § 24–5–1 despite DOT's agreement with the city. *Pullen,* 707 A.2d at 691. We held the express adoption of the duty to maintain the sidewalk in question precluded any municipal statutory duty. *Id.* at 692.

This case is similar to *Pullen.* Both involve DOT's policy of maintaining safe roadways and appurtenances; in *Pullen* the state constructed and maintained a sidewalk and here the state planned to replace all parallel-bar sewer grates in accordance with the DOT's memorandum produced by plaintiff at trial. The only factual distinction between *Pullen* and this case is that in *Pullen* DOT expressly agreed with the city to perform construction, while in this case DOT and the town never entered into an express agreement about the sewer grates.

This minor factual distinction is insufficient to render *Pullen* inapplicable to this case. The construction and maintenance agreement was only an example of a manner in which the state may assume a duty that may otherwise belong to a municipality. *Town of Lincoln v. State of Rhode Island,* 712 A.2d 357, 358 (R.I.1998) (analyzing *Pullen*). The DOT's established policy, and not a municipality's assent to that policy, is determinative. The fact that DOT actually has begun replacing parallel-

bar sewer grates throughout the state renders *Pullen* an applicable authority for the case at bar. Therefore, this factual distinction is not a meaningful difference.

■■■ *Pullen* stands for the proposition that "the [s]tate has the authority to relieve the municipality of its road-maintenance obligations by expressly assuming such duties * * *." *Town of Lincoln,* 712 A.2d at 358. Once DOT enacts a policy to make Rhode Island roadways safer, we will not seek to read our statutes to absolve DOT of a duty undertaken by its own actions. Thus, we need not reach the statutory interpretation issue presented by defendant and, instead, we hold that DOT has an affirmative duty to make Rhode Island roadways safe from the dangers of parallel-bar sewer grates in accordance with its own policy to replace those very grates.

### Conclusion

To summarize, the question of whether the egregious conduct exception applies is a mixed question of law and fact in which the trial justice makes such a determination based on predicate findings of fact by the jury. Based on our holding, the trial justice erred in dismissing plaintiff's case as a matter of law and should have submitted the questions of fact to the jury to determine whether the state's conduct was egregious. Furthermore, § 24–5–1, in the context of this case, does not absolve defendant of the duty to keep roadways safe from the dangers presented by parallel-bar sewer grates.

In closing, we briefly address the continued viability of the much maligned public duty doctrine in light of this—our latest attempt to clarify the law concerning a governmental entity's liability for its negligent conduct. By properly placing the fact-finding responsibilities inherent in the

egregious conduct exception in the hands of the jury, we hope to eliminate the possibility that the public duty doctrine rests on judicial fact-finding, except in those cases in which judgment as a matter of law is appropriate. In reaching this conclusion, we are reminded of the words of Justice Jackson concerning another complex and arcane area of the law:

> "We concur in the general opinion of courts, textwriters and the profession that much of this law is archaic, paradoxical and full of compromises and compensations by which an irrational advantage to one side is offset by a poorly reasoned counter-privilege to the other. But somehow it has proved a workable even if clumsy system when moderated by discretionary controls in the hands of a wise and strong trial court. To pull one misshapen stone out of the grotesque structure is more likely simply to upset its present balance between adverse interests than to establish a rational edifice." *Michelson v. United States,* 335 U.S. 469, 486, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

We conclude by observing that the current state of the public duty doctrine is similar to what Mark Twain said when he heard reports about his death: "Just say the report of my death has been grossly exaggerated." [6]

For the foregoing reasons, we reverse the judgment of the Superior Court and remand the case for further proceedings not inconsistent with this opinion. The papers in this case shall be returned to the Superior Court.

---

6. Respectfully Quoted: A Dictionary of Quotations 76 (Suzy Platt ed. 1993).