May 5, 2022

**Supreme Court**

No. 2020-91-Appeal.
No. 2020-122-Appeal.
(PC 14-5335)

(Dissent begins on Page 15)

James R. Battaglia            :

            v.                 :

James J. Lombardi III, Treasurer for    :
    the City of Providence, et al.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2020-91-Appeal.
No. 2020-122-Appeal.
(PC 14-5335)

(Dissent begins on Page 15)

James R. Battaglia        :

v.           :

James J. Lombardi III, Treasurer for   :
   the City of Providence, et al.

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Lynch Prata, for the Court.**  These consolidated cases came before the Supreme Court on cross-appeals from a final judgment of the Superior Court entered in favor of the defendant, James J. Lombardi III, Treasurer for the City of Providence (the city).  On appeal, the plaintiff, James R. Battaglia (plaintiff or Battaglia), contends that the trial justice erred in granting the city's motion for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure.  In its cross-appeal, the city asserts that the trial justice should have granted judgment as a matter of law in its favor on additional grounds.  For the reasons stated herein, we vacate the judgment of the Superior Court and direct that the Superior Court reinstate the jury verdict.

- 1 -

## Facts and Travel

At approximately 7:30 p.m. on February 28, 2013, plaintiff and his wife arrived at Snookers, a sports bar located on Ashburton Street in Providence, Rhode Island. The couple began searching for parking but were unsuccessful at finding a spot in the parking lot across the street from the bar. As such, Battaglia testified, they drove around the bar "at least twice, maybe three times," before his wife pointed out a parking spot on the street. The parking spot was located underneath a bridge, and plaintiff described the lighting as "pretty much very black." The plaintiff parallel parked his vehicle in the spot, shifted the vehicle into park, and shut the vehicle off. The plaintiff's wife testified that, as she went to open the door to exit the vehicle, she realized that "something is hitting the door." Battaglia proceeded to exit the vehicle and "went around the back of the car" to investigate what was obstructing his wife's door. He testified that, on the sidewalk next to his wife's door, he encountered "a piece of wood" that was "a loose pallet on the side of [the] road[.]" He attempted to move the pallet against a nearby chainlink fence; he testified: "I lifted up the pallet to push it against the chain link fence, and my whole body just went right down this open manhole that I had no idea was there."

As a result of falling into the manhole, plaintiff suffered a broken tibia and fibula in his left leg. On October 30, 2014, plaintiff filed the instant negligence action against the city and various "John Doe" defendants. A two-day jury trial was

held in the Superior Court on September 18 and 19, 2019. At trial, William Bombard, the acting public works director for the city at the time of the incident, testified that, beginning in August 2012, the city was experiencing "a significant problem" with manhole covers being stolen and sold for scrap. Apparently, by November 2012 the thefts had reached "epidemic proportions," and the public works department was requesting additional funds from the city to remedy the problem. In 2012 and 2013 more than 200 manhole covers were stolen in the city.

During that time, the city was unable to immediately replace all of the stolen manhole covers because the supply could not keep up with the demand. Therefore, the public works department developed a hierarchy of hazardous conditions, whereby manhole covers from lesser-traveled streets would be taken up and used to replace stolen manhole covers in higher-traffic areas. If a manhole cover was removed, Bombard testified, the city's usual practice was to put down a metal plate or pallet to cover the open manhole and "provide adequate safety measures, including barrels and cones * * *."

Additionally, the sewer division for the city was instructed "to make the manholes safe[,]" and, upon responding to a missing manhole cover, a crew would cover the hole with plywood then leave cones or barrels to identify the hazard. David Mambro, the superintendent for sewer construction for the city at the time of trial, testified that "[c]ones would be four cones around with caution tape" or a "[b]arrel

would be the barrel put on top of the pallet or plywood." The city employed these warning measures because it wanted to call attention to the hazardous area. Mambro stated that it was never the city's practice to put a pallet over a manhole without leaving identifying cones or barrels.

Bombard also testified that the city kept a log on missing manhole covers and would list the location of the missing cover, when the city was notified, and when the cover was repaired or replaced. However, the city's tracking system did not include the manhole at issue on Ashburton Street. The plaintiff's wife testified at trial that there were no barrels, cones, or tape surrounding the area where plaintiff was injured. Likewise, plaintiff testified that the pallet covering the manhole was not painted, and there was no yellow tape, barrels, or cones. If there had been any warning devices, Battaglia testified, he would not have parked his vehicle there and would have instead driven on. The testimony of William Randall, superintendent of the city's sewer department, revealed that, sometime after March 1, 2013, he went to the scene of the incident and found a manhole with a pallet over the top of it and a barrel nearby.

At the close of plaintiff's case-in-chief, and again at the close of all the evidence, the city moved for judgment as a matter of law. On both occasions, the city argued that the trial justice should enter judgment in its favor because plaintiff failed to present evidence that the city caused the defect or had notice—either actual

- 4 -

or constructive—of the defective condition. Additionally, in support of its first motion for judgment as a matter of law, the city argued that the public duty doctrine granted the city absolute immunity. The city summarily argued that the exceptions to the public duty doctrine did not apply, but did not argue any defect in plaintiff's proof regarding the elements of the egregious conduct exception. In opposing the city's motion for judgment as a matter of law, plaintiff cited the city's sworn interrogatory answers, wherein the city admitted that it had placed the wooden pallet over the open manhole. The plaintiff argued that the city knew of the problem and had a duty of reasonable care.

On both occasions the trial justice reserved decision on the city's motion. At the conclusion of the presentation of evidence, the trial justice indicated that she would have a "charge conference" with the attorneys to "finalize" the jury instructions. The city's proposed jury instructions did not include any instructions on the public duty doctrine, but the instructions did acknowledge the city's duty to keep sidewalks reasonably safe. The plaintiff's proposed jury instructions did include instructions on the egregious conduct exception to the public duty doctrine. The instructions ultimately given by the trial justice to the jury did not instruct the jury in any way whatsoever on the public duty doctrine or its exceptions. Neither party objected to the final instructions given to the jury.

The jury returned a verdict in favor of plaintiff and awarded him $87,500 in damages. Thereafter, the city renewed its motion for judgment as a matter of law, again arguing that plaintiff had failed to prove that his injuries were caused by a defective condition that the city knew of or should have known of, and further arguing that the city was immune from liability pursuant to the public duty doctrine. Specifically, the city argued that a defective condition did not exist because a sidewalk with an open manhole covered by a wooden pallet was reasonably safe. The city further argued that, even if a defective condition were found to exist, the city did not cause the defect and did not have notice of the defect. Lastly, the city contended that the public duty doctrine shielded it from liability because "[t]he application of a pallet and other safety devices on top of a manhole which is missing a cover is of a type of discretionary governmental action." Although the city argued that there was no evidence that would allow a jury to conclude that the city acted in an egregious manner, the city did not substantively address any defects in plaintiff's proof regarding the elements of the egregious conduct exception.

On November 1, 2019, the trial justice rendered an oral pronouncement granting the city's motion for judgment as a matter of law on the ground that the public duty doctrine shielded the city from liability. The trial justice began her decision by addressing whether the city had actual or constructive notice of a defective condition. Viewing the evidence in the light most favorable to plaintiff,

- 6 -

the trial justice concluded that there was evidence that the city "was aware of, and had notice of, and indeed created the condition of placing the wooden pallet over an otherwise exposed manhole without a traffic cone or traffic barrel[.]" The trial justice then proceeded to find, for purposes of the Rule 50 motion and viewing the evidence in the light most favorable to plaintiff, that the presence of a wooden pallet without a warning device constituted a dangerous condition on the sidewalk.

The trial justice then turned to the public duty doctrine to determine "whether the [c]ity can be liable for the mere placement of the wooden pallet on Ashburton Street without a barrel or traffic cone[.]" The trial justice found that the maintenance of streets and sidewalks is a discretionary governmental function, including the manner in which the city addressed the stolen manhole covers. She also determined that none of the exceptions to the public duty doctrine applied because (1) "[t]he maintenance of sidewalks and responding to an exposed manhole is not normally performed by private citizens"; (2) the plaintiff was not owed a special duty as a specific identifiable individual; and (3) the egregious conduct exception did not apply because "the evidence fails to establish that the mere presence of the wooden pallet * * * forced a reasonably prudent person into a position of extreme peril[.]"

As such, the trial justice granted the city's motion for judgment as a matter of law, and final judgment entered in favor of the city on November 26, 2019. The

- 7 -

plaintiff filed a timely notice of appeal on December 13, 2019, and the city filed a timely notice of cross-appeal on December 30, 2019.

## Standard of Review

We review a trial justice's decision on a motion for judgment as a matter of law *de novo*. *Branson v. Louttit*, 213 A.3d 417, 427 (R.I. 2019). We are "bound to follow the same rules and legal standards as govern the trial justice." *Sousa v. Roy*, 243 A.3d 775, 779 (R.I. 2021) (quoting *Lemont v. Estate of Ventura*, 157 A.3d 31, 36 (R.I. 2017)). "The trial justice, and consequently this Court, must examine the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party." *Id.* at 779-80 (quoting *Lemont*, 157 A.3d at 36). "Judgment as a matter of law is appropriate, if, after conducting this examination, the trial justice determines that the nonmoving party has not presented legally sufficient evidence to allow the trier of fact to arrive at a verdict in his [or her] favor." *Roach v. State*, 157 A.3d 1042, 1049 (R.I. 2017) (quoting *O'Connell v. Walmsley*, 93 A.3d 60, 66 (R.I. 2014)). "However, the trial justice must deny the motion and submit the issues to the jury if there are factual issues on which reasonable people may draw different conclusions." *Id.* (quoting *Medeiros v. Sitrin*, 984 A.2d 620, 625 (R.I. 2009)).

- 8 -

**Discussion**

On appeal, plaintiff argues that the city waived the defense of the public duty doctrine because it failed to request a jury instruction on the doctrine, and no such instruction was given by the trial justice. More critically, plaintiff further contends that the trial justice erred in determining that the egregious conduct exception to the public duty doctrine did not apply because she usurped the jury's fact-finding function.

The authority of a trial justice ruling on a Rule 50 motion is limited. As noted *supra*, he or she is required to "examine the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record *all reasonable inferences that support the position of the nonmoving party*." *Sousa*, 243 A.3d at 779-80 (emphasis added) (quoting *Lemont*, 157 A.3d at 36). Here, it is clear to us that the trial justice sought to accomplish via Rule 50 what should have been left to the jury.

In her ruling, the trial justice extensively addressed the egregious conduct exception to the public duty doctrine. This exception saves a plaintiff's claim from being barred by the public duty doctrine if the governmental entity (1) "created or allowed for the persistence of 'circumstances that forced a reasonably prudent person into a position of extreme peril;' (2) * * * had 'actual or constructive knowledge of the perilous circumstances;'" and (3) failed to eliminate the dangerous

- 9 -

condition after "having been afforded a reasonable amount of time" to do so. *Tedesco v. Connors*, 871 A.2d 920, 924 (R.I. 2005) (quoting *Haley v. Town of Lincoln*, 611 A.2d 845, 849 (R.I. 1992)).  This Court has recognized that "[t]he egregious conduct exception is a fact-intensive inquiry" and "a trial justice must allow a jury to find the predicate or duty-triggering facts[.]" *Id.* at 925, 926.  A trial justice may determine the applicability of the egregious conduct exception as a matter of law only "if the facts are not genuinely disputed[.]" *Id.* at 926 (brackets omitted) (quoting *Kuzniar v. Keach*, 709 A.2d 1050, 1056 (R.I. 1998)).

Here, the trial justice plainly erred by making factual determinations at the Rule 50 stage to determine the applicability of the egregious conduct exception.  She specifically found that there was no evidence presented that "the mere placement of a wooden pallet over an otherwise open manhole without any other traffic cone, barrel, or marking * * * forced a reasonably prudent person into a position of extreme peril."  She further found that the record failed "to establish that the [c]ity had actual or constructive knowledge that the pallet was * * * blocking a car door parked on Ashburton Street, and after a reasonable period of time failed to eliminate that condition."  These factual determinations were impermissibly drawn by the trial justice, who also failed to consider the evidence in the light most favorable to

plaintiff and draw all reasonable inferences that supported his position.[1] *See Tedesco*, 871 A.2d at 927.

In our opinion, the record clearly creates an evidentiary basis that could allow a reasonable juror to conclude that the city created circumstances that would force a reasonably prudent person into a position of extreme peril, that the city had actual or constructive notice of the perilous circumstances, and that it failed to remedy that condition after a reasonable amount of time. Specifically, plaintiff produced letters from the public works department to the mayor of the city which revealed that the city was aware, since at least one year prior to plaintiff's injuries, that manhole covers were being stolen "in epidemic proportions," and that "the lack of a cover over a manhole is extremely dangerous" and that covers should be "replaced as soon as possible[.]" Witnesses who worked for the city testified that a manhole without a cover is an extremely dangerous condition.

The acting public works director for the city at the time of the incident testified that the city would cover an open manhole and leave warning devices so as to safeguard the public and prevent someone walking on the sidewalk from falling into

---

[1] We also note that the arguments advanced by the city in its Rule 50 motion were insufficient to allow the trial justice to enter judgment in its favor. When seeking judgment as a matter of law, "the moving party must make it clear to the trial court the defect in his [or her] adversary's proof. *It is not enough to state simply that the opponent's proof is insufficient to justify recover[y].*" Robert B. Kent et al., *Rhode Island Civil and Appellate Procedure* § 50:1, VI-460 (West 2020) (emphasis added).

- 11 -

the manhole. He also testified that he had "numerous conversations with" the superintendent of the city's sewer department about safeguarding the public from the missing manhole covers. Apparently, the city kept a log on missing manhole covers and there was no mention of the Ashburton Street manhole that plaintiff fell into. However, there was testimony from the acting public works director that it was "possible" that there were missing manhole covers that were reported to the city but never recorded on the log. Additionally, there was conflicting evidence presented about whether there was a barrel near the manhole at the time of plaintiff's injuries.

When viewing all of the evidence presented, the trial justice was not permitted to weigh the evidence. *See Tedesco*, 871 A.2d at 927. Rather, she was constrained to draw all reasonable inferences in favor of plaintiff. *Id.* If the trial justice had appropriately conducted this analysis, it should have led her to find that a reasonable juror could conclude that the city (1) knew that a missing manhole cover was extremely dangerous, (2) placed the pallet over the manhole without a cone or barrel on the sidewalk where cars park and therefore had knowledge of the perilous circumstances, and (3) had an opportunity to place warning devices over the pallet and manhole but failed to do so. Therefore, the trial justice erred in entering judgment in favor of the city.

Moreover, the city's failure to move for a new trial is fatal to its position on appeal. The city moved for judgment as a matter of law pursuant to Rule 50 at the

close of plaintiff's case-in-chief, and the trial justice ruled that she would reserve on the motion and "consider it again at the close of the defendant's case. And if necessary, in conjunction with a motion for a new trial should the matter be submitted to the jury." When the city renewed its motion for judgment as a matter of law at the close of all the evidence, the trial justice again reserved her ruling as to that motion. Accordingly, pursuant to Rule 50, "the court [was] deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." Super. R. Civ. P. 50(b). The city proceeded to propose jury instructions that did not mention the public duty doctrine. Likewise, the instructions given by the trial justice to the jury did not include instructions relative to the public duty doctrine or the egregious conduct exception. *See* Super. R. Civ. P. 51(b) ("No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict[.]").

However, the city never filed a motion for a new trial, despite the trial justice's indication that a motion for a new trial might be necessary "should the matter be submitted to the jury[,]" which it was, and the dictates of Rule 50, which provides that "[a] motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law[.]" Super. R. Civ. P. 50(b). Indeed, this Court has recognized that the standards of review employed when ruling on a motion for judgment as a matter of law versus a motion for a new trial are "starkly

- 13 -

distinct[.]" *Blue Coast, Inc. v. Suarez Corporation Industries*, 870 A.2d 997, 1008 (R.I. 2005). As such, the city's failure to file a motion for a new trial ends our inquiry.

The city, as the party that pled the public duty doctrine as a defense to plaintiff's claim, had the burden of proving that defense. *See Ridgewood Homeowners Association v. Mignacca*, 813 A.2d 965, 972 (R.I. 2003) (stating that the party advancing an affirmative defense bears the burden of proof). However, the issues of the public duty doctrine and the egregious conduct exception were not committed to the jury, and there was no objection. Because the resolution of these issues involved factual determinations, the city's failure to move for a new trial deprived the trial justice of the opportunity to correct the error of law that occurred in this case. *See Blue Coast, Inc.*, 870 A.2d 1009 (holding that motions for judgment as a matter of law and new trial are "related, yet distinct, tools of civil practice," and a party's decision to challenge a trial justice's ruling by moving for one, but not the other, "was a procedural misstep that results in a waiver of the argument it presently makes on appeal to this Court").

The city could have, after the trial justice entered judgment as a matter of law pursuant to Rule 50, also moved for new trial pursuant to Rule 59. *Marcello v. K-Mart Corporation*, 712 A.2d 882, 883-84 (R.I. 1998) (mem.) (holding that a trial justice can review alleged errors arising from the grant of a Rule 50 motion for

- 14 -

judgment as a matter of law in the context of a motion for new trial). The city chose not to move for a new trial; therefore, that ship has sailed. Robert B. Kent et al., *Rhode Island Civil and Appellate Procedure* § 59:6, VII-555 (West 2020) (discussing that "a motion for a new trial must be served not later than 10 days after entry of the judgment," without exception).

The city's cross-appeal challenges the trial justice's conclusion during the Rule 50 motion that "the reasonable inference drawn in the light most favorable to the plaintiff is that a [c]ity employee placed that wooden pallet there and did so without a traffic cone or traffic barrel, as per [c]ity policy." However, as previously discussed, the trial justice was constrained to draw all reasonable inferences in favor of the plaintiff. Under this analysis, it is clear that a reasonable juror could have found that the city placed the wooden pallet over the open manhole without a cone or barrel. This conclusion is fatal to the city's challenge.

## Conclusion

For the foregoing reasons, we vacate the judgment of the Superior Court. The Superior Court is directed to reinstate the jury verdict and enter final judgment in accordance therewith. The papers in this case shall be returned to the Superior Court.

**Justice Robinson, dissenting.** After considerable reflection and examination of the record and the trial justice's decision in this case, I have come to the conclusion that I must respectfully dissent.

As the majority points out, a trial justice, in ruling on a motion filed pursuant to Rule 50 of the Superior Court Rules of Civil Procedure, "must examine the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of the witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party." *Sousa v. Roy*, 243 A.3d 775, 779-80 (R.I. 2021) (emphasis omitted) (internal quotation marks omitted). In my judgment, that is exactly what the trial justice did in the instant case. In ruling on the Rule 50 motion, the trial justice viewed the facts *as plaintiff presented them—i.e.*, that the city had placed a pallet over the open manhole on Ashburton Street without providing a barrel, cones, or cautionary tape as a warning. I note that it was reiterated at oral argument before this Court (and also in plaintiff's brief) that the negligent act that plaintiff alleged the city had committed was the placing of a wooden pallet over the open manhole cover *without providing any warnings—viz.*, barrels, cones, or cautionary tape.[1] It is crucial to bear in mind that the alleged negligent act was *not* merely the placing of the pallet nor was it the city's broader lack of success in remedying the rash of manhole cover thefts or in procuring new manhole covers in a swift enough fashion; plaintiff's focus was on the alleged failure to provide warnings. In my opinion, keeping that distinction in mind is

---

[1] What is more, the city conceded in its reply brief before this Court that the "defect" alleged at trial "was a wooden pallet, *covering a manhole, without a cone, barrel, or cautionary tape*." (Emphasis in original.)

- 16 -

critical as we conduct our *de novo* review of the trial justice's ruling in this case. *See Branson v. Louttit*, 213 A.3d 417, 427 (R.I. 2019).

In her decision, after treating the negligent act alleged by plaintiff as if it had in fact transpired as plaintiff contended, the trial justice proceeded to apply settled principles of law to the alleged negligent act;[2] in so doing, she certainly was not weighing evidence or assessing credibility. Indeed, the trial justice assumed that the alleged negligence occurred exactly as plaintiff contended without making her own independent judgment concerning those facts. She then determined that the public duty doctrine applied and that the alleged negligence did not fall within the egregious conduct exception. Consequently, in my opinion, it is a misreading of the record to assert that the trial justice did not consider the evidence in the light most favorable to plaintiff or draw all reasonable inferences in support of his position. *See id.* It is equally inaccurate to assert that she weighed evidence or determined witness credibility in reaching her conclusion on the Rule 50 motion. *See id.*

I acknowledge that we have stated in *Tedesco v. Connors*, 871 A.2d 920 (R.I. 2005), that the egregious conduct exception to the public duty doctrine is a "fact-

---

[2]  The trial justice specifically stated that "viewing all of the evidence in the light most favorable to the plaintiff, this Court must start with the premise that the City only placed a wooden pallet on top of an otherwise exposed manhole, and without the additional safeguard of a traffic cone or barrel as required by City policy." She also opined that she was "constrained to view the evidence as if there had been no barrel placed [on the pallet at issue] in violation of the City's policy in the first instance."

intensive inquiry" and that "a trial justice must allow a jury to find the predicate or duty-triggering facts * * *." *Tedesco*, 871 A.2d at 925, 926. However, we also specifically stated in *Tedesco* that our holding in that case "should not be read as wholly barring a trial justice from determining the applicability of the egregious conduct exception as a matter of law." *Id.* at 926. We stated that "if a plaintiff offers a legally sufficient evidentiary basis upon which no reasonable juror could conclude that the governmental entity's conduct was not egregious, then, in those limited circumstances, a trial justice should determine that conduct is egregious as a matter of law * * *." *Id.* In my opinion, we are confronted with a case that falls squarely into the exception expressly alluded to in *Tedesco*. Upon my reading of the trial justice's decision, I am left with the ineluctable conclusion that she decided the applicability of the egregious conduct exception as a matter of law, as clearly permitted by *Tedesco*.[3]

---

[3]    The majority opines specifically that the trial justice's statement that there was no evidence presented that "the mere placement of a wooden pallet over an otherwise open manhole without any other traffic cone, barrel, or marking * * * forced a reasonably prudent person into a position of extreme peril" was a factual determination. To the contrary, it is my view that the trial justice was not making any factual determination when she made that statement, but rather she was accepting the facts as plaintiff contended they were and was then applying the first prong of the egregious conduct exception to the public duty doctrine to those facts. *See Tedesco v. Connors*, 871 A.2d 920, 924 (R.I. 2005).

   The majority further opines that the trial justice made a factual finding to the effect that the record failed "to establish that the [c]ity had actual or constructive knowledge that the pallet was * * * blocking a car door parked on Ashburton Street, and after a reasonable period of time failed to eliminate that condition." In my

- 18 -

What is more, I cannot detect any error in the trial justice's application of the law to the facts as plaintiff alleged them. The public duty doctrine "shields a governmental entity from liability only when that entity engages in activity that an individual ordinarily would not perform." *Tedesco*, 871 A.2d at 924. It is clear that the trial justice did not err in concluding that the "maintenance of [city] streets and sidewalks" is an activity that an individual ordinarily would not perform; it is a discretionary governmental function. *Id.*; *see Georges v. State*, 249 A.3d 1261, 1265, 1266 (R.I. 2021) (noting that "[t]his Court previously has held that government decisions about roadway design, construction, and maintenance constitute discretionary governmental action and therefore fall within the domain of the public duty doctrine" and holding that "repairing potholes * * * is part and parcel of the state's responsibility for roadway maintenance and falls squarely within the protections of the public duty doctrine"); *see also Verity v. Danti*, 585 A.2d 65, 66-67 (R.I. 1991) (determining that the public duty doctrine and the egregious conduct exception were applicable in the context of a negligently maintained sidewalk).

The egregious conduct exception to the public duty doctrine requires a court to consider: "(1) whether [the governmental] entity created or allowed for the persistence of circumstances that forced a reasonably prudent person into a position

---

opinion, the trial justice did not err. When read in the broader context of her entire decision, it is apparent that she was applying the law to the facts; she was not determining the facts.

- 19 -

of extreme peril; (2) whether that entity had actual or constructive knowledge of the perilous circumstances; and (3) whether that entity having been afforded a reasonable amount of time to eliminate the dangerous condition, failed to do so."[4] *Tedesco*, 871 A.2d at 924 (internal quotation marks omitted). The trial justice held that, even accepting that the city did indeed commit the alleged negligent act and placed the pallet in question without any warnings, there was no evidence that that act forced a reasonably prudent person into a position of extreme peril. I am in agreement with the trial justice's conclusion; it was surely the moving of the pallet that created a position of extreme peril, not the placing of the pallet without warnings.[5] This case is patently distinguishable from our opinion in *Verity*, 585 A.2d at 65, in which a tree trunk blocked the entire sidewalk, forcing pedestrians to walk in the road. *Verity*, 585 A.2d at 65-66. In this case, plaintiff was not *forced* to move the pallet and thereby put himself in a position of extreme peril.[6]

---

[4] I note that the trial justice specifically stated that plaintiff did not argue that any other exceptions to the public duty doctrine were applicable.

[5] In support of its conclusion to the contrary, the majority looks specifically to: (1) the letter from the public works department to the mayor, which revealed that the city was aware of the theft of manholes covers; and (2) testimony that the lack of a manhole cover is an extremely dangerous condition. But, in my view, the majority fails to properly define and focus on what was alleged to be the negligent act in this case.

[6] Finally, I would add that I am unable to agree with the majority's conclusion that the arguments advanced by the city in its original Rule 50 motion were insufficient.

Accordingly, I am led to the same conclusions in this case as those reached by the trial justice. Even assuming the facts to have been exactly as plaintiff contended, those facts do not offer a legally sufficient evidentiary basis for a reasonable juror to conclude that the city's actions constituted egregious conduct. *See Tedesco*, 871 A.2d at 926.

For these reasons, I must record my respectful dissent from the majority's opinion in this case.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | James R. Battaglia v. James J. Lombardi III, Treasurer for the City of Providence, et al. |
| **Case Number** | No. 2020-91-Appeal.<br>No. 2020-122-Appeal.<br>(PC 14-5335) |
| **Date Opinion Filed** | May 5, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Kristin E. Rodgers |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Michael J. Stevenson, Esq.<br>For Defendant:<br><br>Michael A. Calise, Esq. |